## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

              Plaintiff,

v.

Brian Terrance Krueger and
Terance Richard Krueger,

              Defendants.

Case No. 24-cr-57 (DSD/DLM)

**REPORT AND
RECOMMENDATION**

---

This matter is before the Court on Defendants Brian and Terance Krueger's motions to suppress evidence (Docs. 28 (Brian Krueger's Motion to Suppress Evidence Obtained as a Result of Pen Trap and Trace Warrant), 29 (Brian Krueger's Motion to Suppress Evidence Obtained as a Result of Searches), and 37 (Terance Krueger's Motion to Suppress).) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The parties agreed to cancel the motion hearing scheduled for July 10, 2024, and requested that the Court decide the motions on the parties' written submissions. (Doc. 45.) The Court established a briefing schedule on the motion which concluded on August 12, 2024. For the reasons stated below the Court recommends denying Defendants' motions.

## BACKGROUND

On February 28, 2024, Brian and Terance Krueger were charged by four-count indictment with Conspiracy to Distribute Marijuana and Psilocybin in violation of 21

U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1); and Aiding and Abetting Possession with Intent to Distribute Marijuana and Psilocybin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2 (Count 2). (*See generally* Doc. 1.) Brian Krueger was also individually charged with Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count 3); and Terance Krueger was individually charged with Possession with Intent to Distribute Marijuana and Psilocybin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 4). (*See generally id.*) The charges against the Kruegers stem from their alleged sale of marijuana, THC products, and psilocybin mushrooms between 2016 and January 2024. (*See generally id.*)

***Warrants related to Brian Krueger***

On November 7, 2023, Investigator Jacob French of the Ramsey County Sheriff Violent Crime Enforcement Team ("VCET") applied for and obtained a Pen Register, Trap, and Trace ("PRTT") Warrant to track the location of a cellphone with a number ending in 5162. (Gov't Ex. 1.) The warrant affidavit's probable cause statement read:

> Your Affiant is Sergeant Jacob French and is a licensed peace officer in the State of Minnesota employed by the Ramsey County Sheriff's Office. He has been a Ramsey County Deputy for the last 16 years. Sergeant French is currently assigned to the Ramsey County Sheriff's Office Violent Crime Enforcement Team which investigates the distribution of controlled substances, firearm violations and other related violent crimes. As a narcotics and violent crime investigator your Affiant has received training and experience in undercover operations, including physical and electronic surveillance techniques. Your Affiant's primary responsibilities as a VCET investigator have included conducting investigations of street level to upper-level drug traffickers but has also included investigations for possession of firearms by ineligible persons, burglary, stolen property and other related crimes.

In October 2023, your affiant began investigating a large marijuana and psilocybin dealer based on information provided by a Confidential Reliable Informant (CRI). The dealer was identified as Brian Terrance Krueger (DOB: [XX/XX]/1984). The CRI told your Affiant that Brian Krueger goes by the nickname "BZ" and that Brain has a marijuana grow operation in the State of Michigan. . . .

According to the CRI, Brian then sells the marijuana in the State of Minnesota. The CRI stated she/he has purchased pounds of marijuana from Brian in the past. The CRI claimed in the past she/he has seen around 200lbs of marijuana at one of Brian's stash houses. The CRI provided your Affiant with Brian's phone number ([XXX-XXX]-5162) that he/she has used to facilitate drug transactions. The CRI stated Brian and another Asian [man] that goes by the name "Tom X" are working together to move/sell the illegal narcotics.

Your affiant was shown a Facebook profile picture of Brian Krueger by the CRI and later your Affiant used MN DVS [Minnesota Driver and Vehicle Services] to confirm Brian Terrance Krueger was the same person. Within the past two weeks, the CRI stated Brian's new stash house is a small yellow house located at [XXXX] Bush Avenue E. in St. Paul, MN.

Your Affiant used a law enforcement database to check Brian Krueger's phone number [XXX-XXX]-5162. The carrier was found to be Verizon and a name associate[d] to the number is [R.M.]. [R.M.]  is likely a relative of Brian's because she is a property owner at [XXXX] Watson Avenue in St. Paul, MN which is the address that Brian uses on his driver's license. In your Affiant's training and experience it's not uncommon for drug dealers to use a cell phone listed under [someone else's] name in an effort to evade law enforcement detection.

Your affiant requests this cell phone search warrant as it will allow investigators to safely and covertly conduct real-time surveillance on the suspect(s) to identify locations used by Brian Terrance Krueger (DOB: [XX/XX]/1984) and others to store controlled substances, drug proceeds and related evidence and it will assist investigators identifying other co-conspirators involved in the distribution of marijuana and other illegal narcotics.

(Gov't Ex. 1 at 2-3.)

Relying on information gathered from the execution of the PRTT warrant, law enforcement sought and obtained search warrants for two residences associated with Brian Krueger, one on Bush Avenue and another on Watson Avenue. (Gov't Exs. 2, 3.) The Bush Avenue warrant was executed on January 2, 2024 (Gov't Ex. 2 at 16), and the Watson Avenue warrant was executed the next day (Gov't Ex. 3 at 13). The affidavits for both search warrants are identical and state in relevant part:

> In October 2023, your affiant began investigating a large marijuana and psilocybin dealer based on information provided by a Confidential Reliable Informant (CRI). The dealer was identified as Brian Terrance Krueger (DOB: 10/5/1984). The CRI told your Affiant that Brian Krueger goes by the nickname "BZ" and that Brain has a marijuana grow operation in the State of Michigan. This CRI has provided accurate and reliable information in the past. The CRI has previously disclosed information that led your Affiant to arrest and ultimately charge a large methamphetamine and cocaine dealer. That suspect is currently working on a deal to plead guilty with the County Attorney's Office . . .

> On 11/07/2023, your Affiant obtained a phone ping warrant for Brian's cell phone. Ramsey County Judge Ireland issued the warrant authorizing your Affiant to obtain Brian's GPS locations via his cell phone.

> On 11/13/2023, your Affiant reviewed the first phone ping location data that came back for Brian's cell phone and the GPS location put Brian in the area of the stash house at [XXXX] Bush Avenue in St. Paul, MN on 11/13/2023 at 4:20 pm.

> On 11/15/2023, per Brian's cell phone GPS data, he left the [T]win [C]ities area and traveled to Michigan. Again, per the CRI information he/she stated previously that Brian has a marijuana grow in Michigan. On 11/20/2023, at 01:49am, Brian's cell phone GPS data showed he returned to the area of the stash house at [XXXX] Bush Avenue. Your Affiant knows from his training and experience that narcotics dealers will often transport or have loads of narcotics moved during the middle of the night to avoid law enforcement.

> Brian's cell phone GPS data showed he stayed at the stash house until approximately 7:06 pm on 11/20/2023. After that Brian's cell phone GPS data showed he left the stash house and went back to Michigan. Per Brian's

cell phone GPS data, he arrived in Michigan at 11:17 pm. Brian's cell phone GPS data then showed on 11/22/2023 at 03:02 am he returned back to the area of his driver's license address which is [XXXX] Watson Avenue in St. Paul, MN. During this return trip it didn't appear as though Brian stopped at the stash house on Bush Ave when he returned from Michigan.

Your Affiant knows from his training and experience that quick turnaround trips of that distance are common among drug-traffickers moving large amounts of narcotics.

On 11/29/2023, at approximately 3:30pm, your Affiant was conducting surveillance at [XXXX] Bush Avenue and Brian's cell phone GPS data was pinging to this area. Your Affiant observed a maroon GMC Sierra Denali truck parked in the rear of [XXXX] Bush Avenue and watched two males exit the backdoor of [XXXX] Bush Avenue and get into the truck. At 15:33 hours, your Affiant observed the maroon GMC Sierra Denali truck bearing MN license plate [XXXXX] leave the stash house. Your Affiant observed Brian in the front passenger seat of the GMC Sierra. When the GMC left the area, Brian's cell phone GPS data also match which showed Brian is in possession of the cell phone being tracked by your Affiant. Later, on 11/29/2023, Brian's cell phone GPS data again showed him leaving the [T]win [C]ities and traveling to Michigan. While Brian was in Michigan, your Affiant spoke to the CRI who confirmed he/she knew "BZ" was out of town.

On 12/7/2023, at 02:05am, Brian's cell phone GPS data showed he was returning to the [T]win [C]ities area from Michigan. At 02:19am, Brian's cell phone GPS data showed he was in the area of the stash house on Bush Avenue. The return timing of this trip again leads your Affiant to believe Brian was likely returning to Minnesota with illegal narcotics and dropping them off at the stash house. Brian's cell phone GPS data showed he stayed at the stash house until approximately 2:50pm at which time the cell phone GPS pings put him back in the area of [XXXX] Watson Avenue in St. Paul, MN.

After Brian got back into [T]win [C]ities, he sent the CRI a text message stating what drugs he had for sale. The list included mushrooms, edibles, "flavors all around", and diamonds (When cannabinoids are purified and isolated under the right conditions they can form crystalline solids—these concentrates have earned the name "diamonds."). The CRI confirmed with your Affiant that this is a typical text message "BZ" would send out to his customers letting them know that the shop is open and what product he has to sell. I asked the CRI what "flavors all around" meant and the CRI stated that would be the different stains/flavors of leafy marijuana flower that "BZ"

has for sale. The CRI knows "BZ" sells flower marijuana by the pound. The CRI also confirmed that the location for the new product would be the same location he/she has been to in the past at [XXXX] Bush Avenue in St. Paul, MN.

On 12/8/2023, Brian's cell phone GPS pings showed him leaving the Watson Avenue address around 4:36pm and arriving at the stash house around 5:06pm. Then around 11:00pm, Brian leaves the stash house on Bush Avenue and travels back home to the Watson Avenue address.

On 12/9/2023, Brian's cell phone GPS pings show him leaving the Watson Avenue address around 5:20pm and arriving at the stash house at 5:49pm. Then at 10:34pm, Brian's cell phone pings still put him in the area of the stash house. Brian's cell phone GPS showed him back at Watson Avenue around 11:07pm.

On 12/10/2023, at 2:34pm, Brian's cell phone GPS pings show him leaving the Watson Avenue address and arriving at the stash house between 2:49pm – 3:04pm. Per Brian's cell phone GPS data he stayed at the stash house until approximately 11:19pm. Then, he headed downtown St. Paul for a while before eventually returning home to Watson Avenue around 3:20am.

On 12/26/2023, at 3:17pm, your Affiant observed a grey Nissan Altima bearing Michigan license plate [XXX-XXX] parked on the property of [XXXX] Bush Avenue. Your Affiant ran this license plate through a law enforcement data base (NCIC) and learned it belonged to Enterprise Rental. Your Affiant contacted Enterprise Rental and learned the reservation for the Nissan Altima was made by Brian T. Krueger and "Terrance Krueger" was listed as the driver. On 12/27/2023, your Affiant learned Brian Krueger returned to Michigan per his cell phone GPS data.

Within the past week your Affiant was told by the CRI that "BZ" was planning to have a new load of illegal narcotics back in Minnesota in the next few days. Within, the past 72 hours, your Affiant was told by the CRI that "BZ" was ready for customers at the "shop". I confirmed with the CRI that the "shop" was the stash house located at [XXXX] Bush Avenue. The CRI told your Affiant a new load of cannabis products came in and "BZ" would have a rush of customers.

On the evening of 12/29/2023, Your Affiant learned Brian Krueger returned to Minnesota from Michigan. Your Affiant reviewed Brian's GPS phone data and it appears his first stop once he returned from Michigan was at the stash house on Bush Avenue. Later, that night his cell phone pings put him in the

6

area of Running Aces which is a casino in Forest Lake, MN. Your Affiant knows from his training and experience drug traffickers will often use casinos as a way to make their drug proceeds appear to be legitimate winnings from gambling.

On 1/2/2024, Your Affiant observed the same grey Nissan Altima parked in the backyard of [XXXX] Bush Avenue. On 1/2/2024, GPS Phone Pings of Brian's cell phone also put the phone in the area of [XXXX] Bush Avenue. Your Affiant believes Brian Krueger is utilizing the rental car to help facilitate his drug trafficking.

Your Affiant was told by the CRI that "BZ" would typically keep the "shop" (stash house) open in the evening. This matches the cell phone GPS data above that your Affiant described. Your Affiant believes Brian is conducting drug sales at the stash house ([XXXX] Bush Avenue) in the evenings and then returns home to [XXXX] Watson Avenue to sleep. Your Affiant knows from experience that drug dealers will often keep drug proceeds and records of drugs sales/debt away from the stash house to reduce the chance of law enforcement seizing their drug proceeds. Your Affiant believes Brian is keeping drug proceeds and evidence of his drug trafficking at [XXXX] Watson Avenue and most of the illegal drugs will be found at [XXXX] Bush Avenue. Both residences are in the City of Saint Paul, County of Ramsey.

Your Affiant found Brian's public Facebook page under the name "Kreuger T Brian". Your Affiant reviewed the older videos on Brian's Facebook page that show different strains/flavors of marijuana flower. In one video from approximately 11 weeks ago, your Affiant observed a male filming inside a house that matches the inside of [XXXX] Bush Avenue. The male filming has a couple bracelets on his wrist which match bracelets worn by Brian. In the video labeled "Its Game Time Baby", the video taken in what appears to [be] the living room showed many big black garbage bags that appear to be full, large plastic storage bins that are labeled alphabetically and the person your Affiant believes to be Brian sitting at a table in the middle of the room with a clipboard in front of him. The clipboard had a piece of paper on it that appears to be labeled alphabetically and at the top it's got space to write a "Name", "Price", "Qty", "Sold". Additionally, a calculator and another notebook appear to be on the table. Your Affiant is familiar with past criminal investigations where large narcotics dealers have kept records in the same manner to track drug sales.

Your Affiant knows from his training and experience that stash houses will often contain large amounts of narcotics, and it can easily take a week or two to move a large amount of product therefore illegal narcotics should still be

present. This purpose of this warrant is to recover illegal narcotics and evidence of drug sales. If no evidence of drugs sales is found during search warrants please note that investigators won't seize any marijuana that is deemed legal under the new MN cannabis laws.

(Gov't Ex. 2 at 3-9; Gov't Ex. 3 at 3-8.)

Brian Krueger challenges the validity of the PRTT warrant and both residence warrants. First, as to the PRTT warrant, Brian Krueger asserts that the warrant was unsupported by probable cause because the affidavit did not establish the veracity of the CRI's tip, and (2) the remaining information in the affidavit was too conclusory to establish probable cause. Additionally, according to Mr. Krueger, the *Leon*[1] good-faith exception does not save the PRTT warrant because it included so little indicia of probable cause that any belief in its existence was unreasonable. As for the warrants to search the Bush Avenue and Watson Avenue residences, Mr. Krueger contends that because those warrants depended on information gleaned from the faulty PRTT warrant, both are invalid.

The government counters that probable cause supported the PRTT warrant and the warrants to search the Bush Avenue and Watson Avenue residences. But even if the warrants were not supported by probable cause, exclusion of the evidence is improper because law enforcement relied on the warrants in good faith.

***Warrant related to Terance Krueger***

Based on evidence discovered during the January 2 and 3, 2024 searches of the Bush Avenue and Watson Avenue residences, on January 11, 2024, law enforcement sought and

---

[1] *United States v. Leon*, 468 U.S. 897 (1984).

obtained a warrant to search Terance Krueger's residence on Pine Tree Drive. The probable

cause statement of the affidavit stated in relevant part:

> On 1/2/2024 & 1/3/2024, your affiant and members of the Ramsey County Violent Crime Enforcement Team executed two search warrants at two houses in the City of Saint Paul, MN. The suspect in this case is Brian Terrance Krueger (DOB: [XX/XX/]1984). On 1/2/2024, Ramsey County Judge Mitchell signed the search warrants related to an ongoing narcotics investigation at [XXXX] Bush Avenue and [XXXX] Watson Avenue in St. Paul, MN.
>
> On 1/2/2024, at [XXXX] Bush Avenue Investigators recovered 5 firearms during the search warrants plus a felony amount of cannabis flower, psilocybin, and cocaine. Two shotguns and three handguns. Two of those were 9mm handguns with no serial number. It should be noted Brian fled on foot from the residence during the initial execution of the search warrant but was quickly detained in a neighbor's yard. Two other adult males fled from the house at the same time, and both were also quickly detained by Investigators. Investigators identified them as Jacob Andrew Bright (DOB: [XX/XX/]1986) and Terance Richard Krueger (DOB: [XX/XX/]1959).
>
> Terance has no criminal convictions. Additionally, it would be illegal under MN statue 609.667 (3) for anyone to possess a firearm without a serial number.
>
> Prior to the search warrant being executed at [XXXX] Bush Avenue on 1/2/2024, your Affiant observed a 2019 maroon GMC Sierra bearing Minnesota license plate [XXXXX] drive down the alley behind the [XXXX] Bush Avenue address. Then, after not being able-to find a parking spot behind the house the driver, Terance Krueger went around the block and Investigator Graland watched him park the truck on Winthrop Street North. This is just three houses away from [XXXX] Bush Avenue.
>
> On 11/29/2023, at 3:14pm, your Affiant observed this same truck parked the behind [XXXX] Bush Avenue address. A short time later, your Affiant watched Terance driving the truck away from the address with Brian Kruger in the front passenger seat. During your Affiant's lengthy investigation into Brian Krueger, your Affiant learned from a Confidential Reliable Informant that Brian's dad, Terance was involved in the past with helping Brian operate his illegal narcotics trafficking/sales, but the CRI wasn't sure about Terance['s] current involvement if any. The CRI knew Brian Krueger has a large indoor marijuana grow operation in the Upper Peninsula of Michigan and the CRI told your Affiant that Brian sells the marijuana from Brian's Michigan grow in Minnesota at the [XXXX] Bush Avenue address. Phone

ping GPS data from Brian's cell phone show him traveling to the Upper Peninsula town of Bessemer, Michigan on many occasions over the past two months. Your Affiant used public property records from Gogebic County, Michigan and located a residence in Bessemer that is owned by Terance Krueger. Your Affiant knows it's common for drug traffickers to put property in someone else's name to evade law enforcement detection and to help them avoid potential asset forfeiture due to the illegal trafficking of a large amount of narcotics across state lines. A Gogebic County Deputy also told your Affiant they have police records of Terance's GMC Sierra with MN plate [XXXXX] being stopped for a traffic violation in their county.

Although the CRI doesn't know Terance's current involvement, Your Affiant believes Terance is assisting Brian and is fully aware of the operation taking place. Terance was present at [XXXX] Bush Avenue and tried to flee on foot when Law Enforcement approached the house.

This address was clearly set up inside as a full-fledged cannabis and psilocybin store hidden inside a house in a residential neighborhood. The house easily contained over a 110Ibs of cannabis flower and the evidence is still being processed from that search warrant. At the time of the search warrant at [XXXX] Bush Avenue, on 1/2/2024, a 2022 Nissan Altima Enterprise rental car that was reserved and paid for by Brian Krueger was parked behind the [XXXX] Bush Avenue address. This car was picked up by Terance Krueger at Enterprise Rental in Inver Grove Heights on 12/12/23. Later that evening, Brian's cell phone GPS pings show him leaving Ramsey County and heading to Bessemer, Michigan.

With Terance Krueger clearly being aware of the operation at [XXXX] Bush Avenue as it was all in plain view and him fleeing on foot towards the direction of his truck it leads your Affiant to believe Terance has been using the GMC Sierra pickup to come and go from the [XXXX] Bush Avenue stash house. With the amount of narcotics found inside the [XXXX] Bush Avenue address a Nissan Altima would have a difficult time transporting all of the narcotics. Brian would need help from a larger size vehicle and the GMC Sierra truck could accommodate a lot of narcotics. Plus, with firearms found with no serial numbers inside the house which would be illegal for Terance to possess there could be evidence related to the firearms inside Terance's residence at [XXXX] Pine tree Drive, in Maplewood, Minnesota. . . .

Your Affiant believes from the evidence collected at [XXXX] Bush Avenue, Terance Krueger trying to flee [XXXX] Bush on foot when law enforcement approached and the evidence documented in his GMC Sierra that he's involved in the growing, cultivation, and sales of illegal amounts of cannabis products in the states of Minnesota and Michigan. The CRI information of a grow operation in the Upper Peninsula of Michigan also happens to be where

Terence Krueger owns a house and the items found in his truck support Terence travels to the Upper Peninsula of Michigan. Your Affiant believes a commercial sized trimmer would be needed for the amount of marijuana seized at [XXXX] Bush Avenue. Additionally, reflective letters were used at the stash house to help Brian and Terence organize the different cannabis products and similar letters were found in Terance's truck. The bank deposits of cash being $1,000.00 and higher are similar to other narcotics investigations completed by your Affiant. Plus, the small black rubber bands were used to bind together different amounts of money recovered inside the safe from [XXXX] Bush Avenue. . . .

On 01/09/2024, Your Affiant spoke to an employee of Cal Am Properties which is the management company for Rolling Hills Estates (Manufactured Homes). The employee confirmed Terance Krueger and [L.S.] are two of the occupants for [XXXX] Pine Tree Drive per their records. [L.S.] is Terance's girlfriend ·and [XXXX] Pine Tree Drive is listed on her drivers license. On the same date, Your Affiant drove by [XXXX] Pine Tree Drive and observed a black Toyota Rav4 parked at the address.

On 01/10/2024, your Affiant and Sgt. Lackner met with Terance Krueger at the Ramsey County Sheriff's Office - Impound lot. Your Affiant gave Terance a Property Receipt for the cash seized at [XXXX] Bush Avenue. On that form, your Affiant pointed to the address of [XX] Maywood Place and asked Terance if that was still where he lived. Terance replied to your Affiant, "Yes." Your Affiant observed Terance arrive at the impound lot driving the same Toyota Rav4 observed the day prior at [XXXX] Pine Tree Drive. Your Affiant observed an older white female that matched [L.S.] in the front passenger seat.

On the morning of 1/11/2024, your Affiant drove by the [XXXX] Pine Tree Drive address and observed Terance's maroon GMC Sierra truck and the same black Toyota Rav4 parked at the address. Your Affiant believes Terance lied to him about his actual address to avoid law enforcement discovering where he lives.

Your Affiant is requesting a search warrant at [XXXX] Pine Tree Drive, in Maplewood, Minnesota that authorizes members of the Ramsey County Violent Crime Enforcement team to search for additional evidence related to this on-going investigation into a large-scale drug trafficking operation between Michigan and Minnesota.

(Gov't Ex. 4 at 2-7.)

Terance Kruger asserts in his motion that the warrant affidavit "fail[ed] to establish a reasonable likelihood that evidence of a crime would be found at the Pine Tree Drive

residence." (Doc. 37 at 3.) The government disagrees and insists that the warrant to search the Pine Tree Drive residence was supported by probable cause, and alternatively asserts that the *Leon* good-faith exception again spares the evidence from exclusion.

## ANALYSIS

The Fourth Amendment requires that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them] . . . there is a fair probability that contraband or evidence of a crime will be found a in particular place." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should read affidavits with "common sense and 'not in a . . . hyper technical fashion.'" *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)). Courts may only consider the information found within the four corners of the affidavit in determining whether probable cause for the warrant exists. *United States v. Hussein*, No. 20-cr-75 (ADM/BRT), 2020 WL 7685372, at *2 (D. Minn. Oct. 21, 2020), *R. & R. adopted*, 2020 WL 7310899 (D. Minn. Dec. 11, 2020).

Once a warrant has issued, courts reviewing the warrant after the fact accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)). Accordingly, the reviewing judge does not examine the warrant to determine whether the issuing judge "was presented with probable cause," instead, reviewing courts, such as this one, "need only ensure that the issuing official had a substantial basis to conclude that probable cause existed." *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir. 1991).

## I.    BRIAN KRUEGER'S MOTIONS TO SUPPRESS EVIDENCE SHOULD BE DENIED.

### A.    A substantial basis exists for the issuing judge's finding of probable cause for the PRTT warrant.

The Court looks first to the PRTT warrant for the cellphone number ending in 5162. First, Brian Krueger contends that the affidavit failed to establish the veracity of the CRI's statements on which law enforcement relied to obtain the PRTT warrant. According to Mr. Krueger, although the affiant asserted that the informant was reliable, the affidavit was devoid of information about the informant's prior reliability record. Thus, in Mr. Krueger's estimation, this unreliable tip could not support probable cause to issue the warrant. The government counters that the affiant's "failure to specifically describe the CRI's reliability is not fatal to a finding of probable cause because the CRI's reliability, and in turn probable cause, was supported" by the CRI's "statements against [their] own penal interests," law

enforcement's corroboration of "some of the key information provided by the CRI," and the "specificity" of the tip. (Doc. 50 at 7-8.)

An issuing judge "considers the informant's reliability and the basis of [their] knowledge," where, as here, the informant's tip is a part a warrant application's probable-cause calculus. *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *Gates*, 462 U.S. at 233). While an informant's credibility and reliability are important to the determination of probable cause, "they are not separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. Instead, courts must "weigh an informant's statements in the context of all of the circumstances." *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting *United States v. LaMarie*, 100 F.3d 547, 553 (8th Cir. 1996)). Moreover, an informant's statements against their own penal interest carry the presumption of credibility. *Id*. And when an informant's record is unknown, statements against their penal interest coupled with law enforcement's corroboration of some aspects of the tip can support a finding of probable cause. *See United States v. Allen*, 297 F.3d 790, 794-95 (8th Cir. 2002) (finding unknown informant's information "sufficiently credible both because his statements were against his penal interest and because the police were able to corroborate some of the information he provided") (citing *Tyler*, 238 F.3d at 1039 ("the corroboration of minor innocent details can suffice to establish probable cause")).

Here, the affidavit for the PRTT warrant relied on a tip from a confidential informant. Although the affiant described the informant as reliable, he offered no evidence of the informant providing law enforcement with reliable information in the past. But the affidavit established the informant's credibility in other ways. First, the affidavit states that

14

"[t]he CRI stated she/he has purchased pounds of marijuana from Brian in the past[,]" and had used the target phone number to "facilitate drug transactions" with Brian Krueger. (Gov't Ex. 1 at 3.) These statements "were presumptively credible because they were made against [the informant's] penal interest." *Tyler*, 238 F.3d at 1039. Second, law enforcement independently corroborated Brian Krueger's identity and association with the target phone number by matching a Facebook photo of Brian with the photo on his driver's license; and matching the Watson Avenue address associated with the target phone number to the address on Brian's driver's license. Although these innocent details may be benign when separately considered, taken together they can support a finding that the informant was reliable. *See id.* Third, the affidavit established the informant's basis of knowledge because the affidavit stated that informant had personally "seen around 200lbs of marijuana at one of Brian's stash houses." (Gov't Ex. 1 at 3.) "This information was based on the informant's first-hand observations, not merely from rumor or innuendo" and thus bolsters the reliability and credibility of the informant's tip. *United States v. Williams*, 10 F.3d 590, 594 (8th Cir. 1993). The Court therefore finds, based on these facts and with great deference to the issuing judge's determination, the PRTT warrant affidavit sufficiently established the reliability of the CRI's information to support a substantial basis for the issuing judge's finding of probable cause.

Next, Brian Krueger relies on *United States v. Grubbs* to assert that the PRTT warrant is an invalid "anticipatory warrant[.]" (Doc. 28 at 7.) But the Court agrees with the government that the PRTT warrant was not an anticipatory warrant and Mr. Krueger cannot rely on *Grubbs* here. *Grubbs* dealt with search warrant that "would be executed only after

15

a controlled delivery of contraband to [a certain] location." 547 U.S. 90, 92 (2006). But the PRTT warrant here, by contrast, authorized the real-time collection of GPS location information and its execution was not conditioned on any precedent events. The Court therefore finds that the PRTT was not an invalid anticipatory warrant.

## B.     Good faith.

While evidence seized under the authority of a defective warrant will generally be excluded, under the *Leon* good-faith exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Proell*, 485 F.3d at 430 (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (cleaned up)).

No evidence suggests that law enforcement's reliance on the warrant at issue was not in good faith or unreasonable. Accordingly, the Court concludes that the good-faith exception would apply to the PRTT warrant and the evidence discovered because of its execution should not be suppressed even if the warrant were unconstitutional.

## C.     The warrants to search the Bush Avenue and Watson Avenue residences.

The Court next turns to the warrants to search the Bush Avenue and Watson Avenue residences. Brian Krueger does not attack the substance of the residence warrants except to assert that without the information gleaned from the PRTT warrant, the residence

16

warrants were invalid. But other than the assertion that without the PRTT warrant, law enforcement would neither have determined Mr. Krueger's location nor been able to surveille his travel between Minnesota and Michigan, Mr. Krueger does not attack the validity of the residence warrants. Instead, he argues that if the PRTT warrant lacks probable cause, law enforcement cannot rely on the information gleaned from it to support probable cause for the residence warrants without harvesting fruit from a poisonous tree. The government maintains that because the PRTT warrant was supported by probable cause, there is no poisonous tree and therefore no constitutional deficiency within the residence warrants.

Because the Court finds a substantial basis supports a finding of probable cause for the PRTT warrant, law enforcement's reliance on information learned from the PRTT warrant to support probable cause for the Bush Avenue and Watson Avenue warrants does not violate the fruit of the poisonous tree doctrine. As with the PRTT warrant, the Court finds that a substantial basis supports the issuing judge's finding of probable cause for the Bush Avenue and Watson Avenue warrants.

The Court therefore recommends that Brian Krueger's Motion to Suppress Evidence Obtained as a Result of the Pen Trap and Trace Warrant and Motion to Suppress Evidence Obtained as a Result of Searches should be denied.

## II.     TERANCE KRUGER'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED.

### A.     The warrant affidavit established a sufficient nexus between the Pine Tree Drive residence and criminal activity.

The Court turns next to Terance Krueger's Motion to Suppress Evidence. Mr. Krueger asserts in his motion that the warrant to search the residence at Pine Tree Drive was not supported by probable cause because it failed to establish a reasonable likelihood that evidence of a crime would be found there. In other words, Mr. Krueger argues that there was no nexus between his residence at Pine Tree Drive and criminal activity.

In determining whether a nexus exists between the evidence sought and the place to be searched, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (*United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)). The determination of probable cause is based on "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the court] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Markwald,* No. 21-cr-21 (ECT/BRT), 2021 WL 6808303, at *11 (D. Minn. Nov. 4, 2021) (citing *Gates*, 462 U.S. at 238), *R. & R. adopted*, 2022 WL 43306 (D. Minn. Jan. 5, 2022). "However, judges are permitted to draw reasonable inferences from the totality of the circumstances when making the probable cause determination." *United States v. Santos-Hunter,* No. 23-CR-310 (DWF/DJF), 2024 WL 2892862, at *5 (D. Minn. Mar. 6, 2024) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)) (cleaned up), *R. & R. adopted,* 2024 WL 1928711 (D. Minn. May 2, 2024).

Here, law enforcement sought a warrant to search Terance Krueger's residence for evidence of drug trafficking operations after he was caught fleeing from Brian Krueger's Bush Avenue residence during the execution of that search warrant. The affidavit to search

the Pine Tree Drive residence stated that during the execution of the Bush Avenue warrant, Terance Krueger fled from the house when law enforcement approached, but was "quickly detained by investigators." (Gov't Ex. 4 at 3.) The affidavit also stated that during the search of the Bush Avenue residence, law enforcement recovered "5 firearms . . . plus a felony amount of cannabis flower, psilocybin, and cocaine. Two shotguns and three handguns. Two of those were 9mm handguns with no serial number." (*Id.*) And the affidavit stated that based on evidence of a drug trafficking operation being "all in plain view" at the Bush Avenue residence, the affiant believed that Terance Krueger was "aware of the operation." (*Id.* at 4.) Further, because there were "firearms found with no serial numbers inside the house which would be illegal for Terance to possess," the affiant reasonably opined "there could be evidence related to the firearms inside Terance's residence at [XXXX] Pine Tree Drive[.]" (*Id.* at 4.) Finally, the affidavit stated that an employee for the property management company that manages the Pine Tree Drive residence "confirmed Terance Krueger and [L.S.] are two of the occupants for [XXXX] Pine Tree Drive per their records" and the affiant "observed Terance's maroon GMC Sierra truck"—which previously been seen near the Bush Avenue residence—parked outside the Pine Tree Drive residence on the same day that he sought the search warrant. (*Id.* at 6.)

The Court finds that the information in the affidavit provides a substantial basis to believe that evidence of criminal activity would be discovered at the Pine Tree Drive residence. *See Tellez,* 217 F.3d at 549 (upholding search warrant where evidence of "continuing course of criminal activity" in one location gave rise to fair inference that Mr. Tellez was keeping "evidence related to his drug dealing in his home"); (*see also United*

*States v. Neadeau*, No. 20-cr-224 (WMW/LIB), 2021 WL 4046393, at *4 (D. Minn. June 22, 2021) (noting that magistrates may draw reasonable inferences about where evidence is likely to be kept), *R. & R. adopted*, 2021 WL 367496 (D. Minn. Aug. 19, 2021.)

**B.      Good faith.**

As with the PRTT warrant no evidence suggests that law enforcement's reliance on the warrant to search Pine Tree Drive was not in good faith or unreasonable. Accordingly, the Court concludes that the good-faith exception would apply to the Pine Tree Drive warrant and the evidence discovered because of its execution should not be suppressed even if the warrant were unconstitutional.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case **IT IS RECOMMENDED** that:

1.      Brian Krueger's Motion to Suppress Evidence Obtained as a Result of the Pen Trap and Trace Warrant (Doc. 28) be **DENIED**;

2.      Brian Krueger's Motion to Suppress Evidence Obtained as Result of Searches (Doc. 29) be **DENIED**; and

3.      Terance Krueger's Motion to Suppress (Doc. 37) be **DENIED**.


Date: September 11, 2024                      *s/Douglas L. Micko*
                                              DOUGLAS L. MICKO
                                              United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of

Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).